## WILLIAM P. LUND & wife *vs.* VARNUM WOODS.

The widow of a grantee of an equity of redemption, conveyed to him during the coverture, and by him conveyed to the mortgagee, without her release of dower therein, is entitled to dower in such equity, as against the mortgagee and his assignee of the mortgage and the equity: And possession taken of the mortgaged premises, by the mortgagee, after the conveyance of the equity to him, for the purpose of foreclosing the mortgage, and the continuance of that possession by his assignee, for the same purpose, will not bar such widow's right of dower, though she knows that possession is taken and continued, unless notice is given to her, after her husband's death, and three years before she claims her dower, that possession was taken and held for the purpose of foreclosure.

THIS was a bill in equity, in which William P. Lund and Mary J. Lund set forth, that said Mary, on the 4th of April 1820, was married to James Blood, who died on the 1st of May 1834, and that she, on the 3d of October 1834, was married to the said Lund : That Luther Blood, on the 26th of May 1832, being seized in fee of fifty three acres of land (described) in Dunstable, conveyed the same to Edmund Page, by a deed of mortgage, the condition of which was, that if said Luther, his heirs, executors or administrators should pay to said Edmund, his heirs, executors, administrators or assigns, the sum of $250 " in one year, with interest annually," then said deed, and a promissory note, of the same date, for the same sum, should both be void : That said Luther, on the 18th of October 1832, by his deed of that date, conveyed all his interest in the aforesaid land to the abovenamed James Blood, then the husband of said Mary ; whereby, and by force whereof, the said James became seized of an equity of redemption in said premises : That said James, on the 30th of April 1833, by his deed of that date, conveyed all his interest in said premises to the said Edmund Page, to have and to hold the same to him and his heirs and assigns : That said Edmund, on the 30th of December 1835, by his deed of that date, conveyed said premises to said Woods, (the defendant,) to have and to hold the same to him and his heirs and assigns : That said Mary never released her right of dower in the equity of redemption aforesaid, whereof the said James Blood was seized during her

coverture with him ; and that the said William P. and Mary J , in her right, were entitled to dower in said equity of redemption. Wherefore they prayed that the defendant might be held to answer to the bill, and to all the allegations therein, and to render an account of the money due on said mortgage and note, and of the rents and profits of said premises, received by the said Edmund and by the defendant, and of the money, if any, paid for taxes assessed on said premises, and expended in repairs, improvements and other necessary expenses ; that the court would inquire and determine, as well what sum of money is due on said mortgage and note, as what part of said sum it is just and equitable that the said William P. and Mary J. should pay to the defendant, in order to be allowed to redeem, so that dower, in her right, might be set out in one third part of said premises ; and that, upon payment of such sum, if any, dower might be thus set out.

The defendant averred, in his *answer*, (among other things,) that after the time when said deed of April 30th 1833 was made by said James Blood to said Edmund Page, to wit, on the 30th of May 1833, the said Page (the said condition of said mortgage deed having been broken, and said promissory note being due and unpaid) made open and peaceable entry into and upon said premises, in said mortgage deed mentioned, by and with the consent of the said James, and then and there took actual possession of said premises, for the purpose of foreclosing the said James's right in equity of redeeming said mortgaged premises, and also for the purpose of foreclosing the right in equity of redeeming said premises, which might or could vest in any other person, by force and virtue of the seizin of the said James ; and that the said Page, having so entered, as aforesaid, upon said premises, for the purpose aforesaid, and with the knowledge and consent of the said James, as aforesaid, held and continued quiet and peaceable possession thereof, for the purpose aforesaid, until said 30th day of December 1835, when the said Page conveyed his interest in said premises, and the said mortgage deed and the note thereby secured, to the defendant, as

aforesaid ; and the defendant, by force and virtue of such conveyance, then and there became seized of the said Page's interest in said premises, and in said mortgage deed and the note thereby secured, and then and there entered into and upon said premises, and took peaceable possession thereof, claiming as the assignee of said Page, and meaning and intending to continue the possession aforesaid of the said Page, for the purpose aforesaid ; and that the said Page, having so entered, for the purpose aforesaid, with the knowledge and consent of the said James, together with the defendant, to whom said Page conveyed as aforesaid, after such entry by said Page, and who had, for the purpose of continuing the said Page's possession, as aforesaid, entered into and upon said premises, held and continued quiet and peaceable possession thereof, for the purpose aforesaid, for the space of three years next ensuing said 30th day of May 1833, and, until the 30th day of December 1844, the time of the commencement of this suit : And that the said Page, after the death of said James Blood, and before his said conveyance to the defendant, to wit, on the 10th of May 1834, and before the marriage of said Mary J. to the said William P., being advised thereunto, and out of abundant caution in this matter, and for the purpose of foreclosing any right in equity which the said Mary J. then pretended to have in said premises, gave notice to her of his entry aforesaid into and upon said premises, for the purpose aforesaid, and of his holding them, as aforesaid, for the purpose aforesaid, although the said Mary J. was notified thereof, and well knowing of the same, before the said 10th day of May abovementioned. And the defendant averred, that by force and virtue of said proceedings, the said Mary J.'s right in equity of redeeming said premises was and is forever foreclosed

The plaintiffs, by way of *replication* to the defendant's answer, denied that they ought, by any thing in said answer contained, to be precluded from having and maintaining their said bill, because the said answer, as they alleged, was uncertain, untrue and insufficient. They therefore prayed

that their bill might be sustained, and that such decree or decrees should be passed, as equity might authorize and require

Evidence was taken, (the particulars of which need not be here stated,) which failed to show the requisite notice to the female plaintiff, after her first husband's death, of an entry upon the mortgaged premises for the purpose of foreclosure.

*Farley*, for the plaintiffs, cited *Shearer* v. *Ranger*, 22 Pick. 447. *Newall* v. *Wright*, 3 Mass. 155. *Scott* v. *McFarland*, 13 Mass. 314. *Thayer* v. *Smith*, 17 Mass. 429. *Hadley* v. *Houghton*, 7 Pick. 29. *Swan* v. *Wiswall*, 15 Pick. 126. *Eaton* v. *Simonds*, 14 Pick. 98. *Gibson* v. *Crehore*, 3 Pick. 475, and 5 Pick. 146.

*B. Russell*, for the defendant, referred to some of the cases cited for the plaintiffs, and also to *Pitney* v. *Leonard*, 1 Paige, 461. *Messiter* v. *Wright*, 16 Pick. 151. *Blood* v. *Blood*, 23 Pick. 80. *Holbrook* v. *Finney*, 4 Mass. 566. *Van Vronker* v. *Eastman*, 7 Met. 157. *Taylor* v. *Weld*, 5 Mass. 109.

WILDE, J. This was a bill in equity to redeem a mortgage in the right of the wife, and the defendant admits that James Blood, her first husband, was seized of a right in equity to redeem the mortgaged premises, during her coverture with him; but he denies that she ever was or now is entitled to dower. He admits, however, that she has never released her right of dower, but avers that on the 30th day of May 1833 the mortgage was foreclosed, by the entry of Edmund Page, the mortgagee, (from whom the defendant derives his title,) with the consent of the said James Blood, and that he and the defendant have had possession ever since. But we think it very clear, from the facts, that the plaintiffs cannot be barred by any such entry, unless notice was given to the widow, after the death of her first husband; and that an entry for the purpose of foreclosing the mortgage, after the mortgagee had purchased the equity of the said Blood, was inoperative. It was, indeed, an absurdity. Page had the whole estate. The plaintiff's right was then conditional and inchoate, and was only perfected by her surviving her husband. She therefore could not be barred of her claim, unless she had notice,

48 *

after the death of her husband, that Page or the defendant held the premises for the purpose of foreclosing her right of redemption.   It is alleged in the answer that such notice was given by the said Page.   But this allegation is not responsive to the bill, and is traversed by the replication ; and the evidence fails to prove that any such notice was given by Page or the defendant.   Page testifies, it is true, that she knew that he assigned the premises under his mortgage and the quitclaim deed from her husband ; that he had frequent conversations with her ; and that he so informed her.   But there is no evidence that it was notified to her that he held the premises for the purpose of foreclosing the mortgage if she should not redeem it.   She knew that her husband had released his right in equity, but she knew also that she had not relinquished her right of dower, and that if Page or the defendant intended to bar her right, they were bound to give her notice, three years before she could be barred, of their intention, which notice must be proved, and is not to be presumed from the possession.   We are therefore of opinion that the evidence is insufficient to bar the right of dower claimed by the plaintiffs, and that they are entitled to redeem the mortgage according to the principles laid down in *Gibson* v. *Crehore*, 5 Pick  140, and in other cases.